948 F.2d 1291
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
JIM KENNEDY, Defendant-Appellant.
 No. 91-5283.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1991.
 
 Before RALPH B. GUY, Jr., Circuit Judge, WELLFORD, Senior Circuit Judge and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Jim Kennedy, was charged in a six-count indictment with selling firearms to convicted felons, in violation of 18 U.S.C. § 922(d)(1). After a jury trial, Kennedy was convicted of three of the six counts.
 
 
 2
 On appeal, the defendant raises two issues: (1) there was insufficient evidence to convict him on Count 4 in the indictment, and (2) the district judge erred in imposing a six-level increase for a section 922(d) conviction.
 
 
 3
 Upon a review of the record, we find no merit to defendant's contentions, and we affirm his conviction and sentence.
 
 I.
 
 4
 The defendant was a deputy sheriff in Hopkins County, Kentucky, from 1977 until 1985. In 1985, he ran for the office of sheriff and was defeated. The newly elected sheriff declined to rehire Kennedy as a deputy. Finding himself out of work, defendant began buying and selling firearms, principally at flea markets in Kentucky. He was not a licensed gun dealer, and Kentucky law did not require him to have a license.[1]
 
 
 5
 In the course of making routine reviews of firearms sales records, agents of the Bureau of Alcohol, Tobacco & Firearms (ATF) became aware that in 1989 and 1990 Kennedy had purchased over 700 firearms from one firearms dealer alone. Many of the purchases were inexpensive hand guns of the "Saturday Night Special" variety. Becoming suspicious as to whether any of these firearms were being sold in contravention of federal law, the ATF agents decided to test the waters. To do this, they secured the services of an informant, Ronnie Gipson, who was a convicted felon. Gipson was to attempt to purchase a firearm from Kennedy after making it clear to Kennedy that he was a convicted felon.
 
 
 6
 Gipson did purchase five handguns from Kennedy on January 30, 1990, and this purchase became the basis of Count 1 in the indictment. Gipson was wearing a body recorder which taped his conversations with Kennedy. A review of the recording by the ATF agent handing the case revealed that Gipson had bungled his role to some degree, and the agent decided to use a new "purchaser."[2] Lynn Fredell, another convicted felon, was subsequently enlisted by the ATF to attempt to purchase firearms from Kennedy. Fredell was instructed to make it clear to Kennedy that Fredell was a convicted felon.
 
 
 7
 On February 13, 1990, Fredell purchased four firearms from the defendant. On February 20, 1990, another four firearms were purchased. Four additional handguns were purchased on March 1, and three more were purchased on March 15. The last purchase of six firearms occurred on March 26, 1990. Kennedy was indicted on June 5, 1990, and the five purchases of firearms by Fredell were the basis of counts two through six of the indictment.
 
 II.
 The Sufficiency of the Evidence on Count 4
 
 8
 The six counts of the indictment reflected the chronological order of the sales. Kennedy was acquitted on counts one, two, and three, which were the three earliest sales in point of time. As to Count 1, as indicated earlier, the jury verdict is understandable, as Gipson simply did not make it clear to Kennedy that he was still under the disability of being a convicted felon. The evidence as to all of the counts was essentially the same; the informants testified as to what occurred and the taped conversations of each transaction were played for the jury.
 
 
 9
 In analyzing whether the evidence was sufficient on Count 4, the standard we apply is whether, after viewing the evidence in the light most favorable to the prosecution, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U S 307 (1979).
 
 
 10
 Count 4 of the indictment related to the March 1, 1990, transaction between Kennedy and Fredell. In arguing that the evidence to support the March 1 charge was insufficient, defendant would restrict the evidence only to what was said between the two at the time of the March 1, 1990, sale. Although, arguably, enough was said at the time of the March 1 sale to support a rational juror's conclusion that Kennedy knew Fredell was a convicted felon, we need not view the evidence so restrictively.
 
 
 11
 The March 1 sale was the third sale between Kennedy and Fredell. An ongoing relationship had been established to the point where this third sale was out of Kennedy's home rather than a flea market. By this time, Fredell had made it clear to Kennedy that he could move a lot of firearms and that he would be a regular customer. At both February meetings and the March 1 meeting, Fredell had made a wide range of comments, including that he had been in the penitentiary, that it was illegal for him to buy guns, and that he would go back to jail if caught with firearms in his possession. It is reasonable to conclude that the jury gave Kennedy the benefit of the doubt on the two February sales, but, by the time the March 1 sale was consummated, enough had been said and enough had occurred to convince the jury that Kennedy was not going to let a good customer get away simply because of a felony record. There is ample evidence in the record to support such a conclusion.[3]
 
 III.
 The Sentencing Guidelines Issue
 
 12
 Sections 2K2.2(a)(1) and (2) of the Guidelines provide that, if one is convicted of a prohibited transaction involving firearms, the base offense level is 6 unless the conviction is pursuant to 18 U.S.C. § 922(o) or 26 U.S.C. § 5861, in which case the base offense level is 16. The base offense level is then increased in relation to the number of firearms involved. U.S.S.G. § 2K2.2(b)(1). Here, for example, because 13 firearms were involved, the base offense level was increased by four. Defendant concedes this was appropriate. However, the Guidelines go on to provide in section 2K2.2(b)(3)(A), "if the defendant is convicted under 18 U.S.C. § 922(d), increase by 6 levels." The trial judge followed this clear mandate, and we think correctly so. Other than arguing that prior to 1989 a sale to a convicted felon would have resulted only in a 2 point increase, defendant offers little to support his contention that the application of this section results in double counting. Section 2K2.2 covers a great variety of firearms offenses. Most of them carry a base offense level, as does a violation of 18 U.S.C. § 922(d). All of the offenses covered are subject to a base offense level increase based upon the number of firearms involved. There are a few offenses, however, that are deemed more serious, and the Guidelines provide for a further increase. For example, a sale to a minor results in a 1 level increase. The Guidelines treat sales to convicted felons as very serious and mandate a 6 level increase. We are unable to follow defendant's argument that, because he specifically was convicted of selling to a convicted felon, any increase in the base level offense somehow results in double counting. If the original base offense level for a section 922(d) violation was higher than six, which is the generic gun offense level, then a double counting argument might make some sense if yet another increase was mandated. Such is not the case here. The language of the Guidelines is clear and unambiguous, and we know of no principle of law violated by its application.[4]
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It is not clear from the record if federal law required him to be licensed, but he was not charged with selling without a license
 
 
 [2]
 Kennedy was acquitted of the charge in the indictment involving the sales to Gipson
 
 
 [3]
 Fredell also told Kennedy that he was committing other illegal acts, such as buying and selling marijuana, so Kennedy had every reason to know that there was an aura of illegality around his entire course of dealings with Fredell
 
 
 [4]
 Defendant makes a double jeopardy argument, which we find wholly lacking in merit